### THE STATE OF CONNECTICUT *against* ROSWELL.

In an information for incest, alleged to have been committed, by the prisoner with his legitimate daughter, an actual marriage between the prisoner and such daughter's mother, must be proved.

For this purpose, neither cohabitation, reputation nor the confessions of the prisoner, are admissible.

This was an information, in behalf of the state, for the crime of incest, under the 63rd section of the act concerning crimes. This offence was charged to have been committed with *Anna Roswell,* the *legitimate daughter* of the prisoner.

On the trial to the jury, on the plea of *Not Guilty,* at *New-Haven, August* term, 1826, before *Lanman,* J. testimony was offered, in support of the information, of the prisoner's confessions, at various times, that the said *Anna* was his daughter; that her mother, *Sarah Roswell,* was his lawful wife; accompanied with evidence that they had cohabited together as husband and wife, uninterruptedly, for more than thirty years last past, and had always been reputed husband and wife; and also, that the said *Anna,* now about twenty-one years of age, had lived with her reputed parents from the time of her birth. To this testimony the counsel for the prisoner objected, insisting that proof must be made, that *Anna* was his *legitimate daughter;* and therefore, that a marriage *in fact* between the prisoner and *Sarah Roswell* must be proved; and that neither reputation, cohabitation, nor the confession of the prisoner that he was married, could be received. The judge overruled the objection, and admitted the testimony. The jury found the prisoner *guilty.* He then moved for a new trial, on the ground that the testimony should have been rejected.

*Ingersoll* and *Kimberly,* in support of the motion, contended, 1. That in order to sustain the prosecution, it was indispensably necessary to prove, that *Anna* was the *legitimate daughter* of the prisoner.

2. That it was incumbent on the public prosecutor to prove a marriage *in fact* between the prisoner and *Sarah Roswell,* the mother of *Anna;* evidence of cohabitation and reputation, and the admissions of the prisoner being incompetent to establish that fact. 1 *Wheat. Selw.* 10. *Peake's Ev.* 330. *Swift's Ev.* 140. 1 *Swift's Dig.* 501. *Bull. N. P.* 27. *Morris* v. *Miller,* 4 *Burr.* 2057. *Birt* v. *Barlow, Doug.* 171. *The People* v. *Humphrey,* 7 *Johns. Rep.* 314. *The Commonwealth* v. *Littlejohn* & al. 15 *Mass. Rep.* 163. *The Commonwealth* v. *Norcross,* 9 *Mass. Rep.* 492. 1 *Russell on Crimes* 299. *Lang-*

*New-Haven,*
*July,*
*1827.*

State
*v.*
Roswell.

*don's* case, for bigamy, in *New-Haven* county, before three judges.

*N. Smith* and *Chapman,* contra, contended, 1. That the evidence adduced, on the trial, to prove, that *Anna Roswell* was the *legitimate* daughter of the prisoner, was properly admitted. Here it is not necessary to controvert the proposition, that an actual marriage must be proved. Cohabitation and reputation furnish presumptive evidence of such a marriage. In most cases, this evidence would entirely satisfy the minds of the triers. The confessions of the prisoner, are still stronger evidence. You may take the life of a prisoner on his confessions alone. *Morris* v. *Miller,* 4 *Burr.* 2057. and *Birt* v. *Barlow, Doug.* 171. were both actions for criminal conversation, in which the plaintiff sought to prove his own marriage. Obviously, he could not make evidence *for* himself, by his own conduct; much less, by his own declarations out of court. How do these decisions tend to shew, that the confessions of a prisoner are not evidence *against* him? The *dicta* to be found in the common-place books, and some *American* decisions, are founded on the two cases referred to. No *English* case, turning on the point, is to be found, which sanctions the doctrine contended for, by the prisoner's counsel; but *Truman's* case, an indictment for bigamy, is the other way. 1 *East's C. L.* 470.

2. That it was not necessary to prove the *legitimacy* of *Anna Roswell;* and consequently, if the evidence adduced to prove it, was inadmissible, still as the prisoner might be convicted, without its being proved, a new trial will not be granted. Incest may be committed with an illegitimate child, both at common law, and by our statute; and the averment regarding the legitimacy of the child, may be rejected as surplusage. It is a principle running through the whole criminal law, that it is sufficient to prove so much of the indictment, as shows that the defendant has committed a substantive crime therein described. 1 *Chitt. Crim. L.* 251.

DAGGETT, J. The prisoner seeks a new trial, on the ground that the testimony should have been rejected; and this is the question now presented for discussion.

It is insisted by the counsel for the prisoner, that whenever a marriage is alleged in an indictment or information, and a marriage is essential to constitute the act a crime, a marriage in fact

must be proved; and that the proof must be either by a copy of the record of the marriage, or the testimony of a witness who was present at its celebration: and that at least proof of cohabitation, reputation or confession of the prisoner, of the fact, is not sufficient. They allege, that all the authorities in the *English* books, and in our own country, are to that effect. Thus, in *Morris* v. *Miller,* 4 *Burr.* 2057. 2059. Lord *Mansfield,* who delivered the opinion of the court, says: "We are all clearly of opinion, that in this kind of action, an action of criminal conversation with the plaintiff's wife, there must be evidence of a marriage *in fact*: acknowledgement, cohabitation and reputation are not sufficient to maintain this action. We do not at present define what may, or may not, be evidence of a marriage in fact. This is a sort of criminal action." And again: "In prosecutions for bigamy, a marriage in fact must be proved." In *Birt* v. *Barlow, Doug.* 171. *Bull. N. P.* 27. *Peake's Evid.* 330. 1 *Wheaton's Selwyn* 10. the same general doctrine is laid down. In all these, and many other cases, which might be cited, a distinction is set up, between the nature of the proof of marriage, requisite in ordinary cases of a civil nature,—such as those in which it is attempted to subject a man for the debts of his wife,—and in criminal prosecutions, and the action for criminal conversation, which, in the case above cited, Lord *Mansfield* calls "a sort of criminal action;" and in which latter cases, the act done is a crime, by force of a marriage recognized by the laws of the land as legitimate. This doctrine is also explicitly admitted in *New-York. Fenton* v. *Reed,* 4 *Johns. Rep.* 52. and in *The People* v. *Humphrey,* 7 *Johns. Rep.* 314. on an indictment for bigamy; also in *Massachusetts,* in *the Commonwealth* v. *Norcross,* 9 *Mass. Rep.* 492. on an indictment for adultery, and *The Commonwealth* v. *Littlejohn & al.* 15 *Mass. Rep.* 163. on an indictment for lascivious cohabitation. In *Connecticut,* it is believed, no member of the profession has given an opinion in favour of the admission of such testimony in a prosecution for adultery or bigamy, of which there have been many, or in actions for criminal conversation. And in the county of *Middlesex,* in the *State* v. *Canfield,* in 1813, in an information for adultery, and in many instances of trials for bigamy, such testimony, after solemn argument and much deliberation, was rejected. The same principle is laid down in *Swift's Ev.* 140. and in his *Digest, vol. 1. p.* 501.

*New-Haven,*
July,
1827.

State
*v.*
Roswell.

If it be said, that the *English* cases above cited, are actions for criminal conversation and indictments for bigamy only, it may be replied, that indictments for incest and adultery, are unknown in the temporal courts in *England.* These offences (4 *Black. Com.* 65.) have been left, since the restoration, to the feeble coercion of the spiritual court. In *Connecticut,* however, in cases of adultery, and in *Massachusetts,* in the same cases, and also in those for lascivious cohabitation, the principle is adhered to, with inflexibility. The court cannot discover a reason why the testimony in question should be rejected in trials for bigamy, which does not, with equal force apply to those for adultery and incest; and more especially in this case, where the allegation is special, that the daughter was *legitimate,* necessarily inplying the legal marriage of her parents. It is familiar law, that such an allegation must be proved, or the prisoner must be acquitted.

In the foregoing view of the subject, it would seem quite clear, that the testimony ought to have been rejected. But the attention of the court is called to *Joseph Trueman's* case, reported in 1 *East's P. C.* 470. and to the remarks of *Starkie* thereon. 3 *Stark Evid.* 1185, 6. That was a trial for bigamy. On looking into that case, it does not appear, that the admission of the evidence now complained of, was sanctioned, or the general doctrine of the cases cited above, denied. Two of the judges considered the proof in the nature of a record; and the case shews, that neither proof of reputation or cohabitation should be received; and it was not decided, that confessions were sufficient evidence to convict the prisoner. This case was before the learned court in *New-York,* in *The People* v. *Humphrey,* 7 *Johns. Rep.* 314. a case of bigamy, and has not been deemed there, or elsewhere, an authority to overturn or shake the decisions on this point.

It is also asked, why testimony of this description should be rejected, in cases of this nature, while it is admitted in most others, where a marriage is in question. It is sufficient to reply, if a rule of law is against its admission, this should satisfy. Judges should repose with confidence, in the administration of justice, on rules established and acquiesced in; and especially, in relation to rules of evidence, in trials where the life or liberty of a citizen is in jeopardy. Fluctuation in decisions is always to be regretted; and peculiarly so, as to the admission or re-

jection of testimony, which affects the important rights of the accused.

*New-Haven,*
July,
1827.

State
*v.*
Roswell.

Again, it cannot escape observation, that this species of evidence, is liable to well grounded objections. The cohabitation of persons as husband and wife, without any marriage, is too frequent to need comment; and confessions of marriage, in all such cases, whether a marriage in fact has taken place or not, may be expected to justify the conduct and screen the offenders from censure and punishment. Unlike confessions of facts in ordinary cases, made against one's interest, these are not unfrequently prompted from the most selfish motives. Besides, a man or woman may verily suppose a marriage to have been consummated, when no lawful marriage ever took place. Ignorance of the law on this subject may be presumed, in many cases, and confessions of a marriage made, without a knowledge of the requisites to constitute it such.

I am satisfied, that this testimony was, from its nature, inadmissible, because if accompanied with proof of a marriage in fact, unnecessary, and if not so accompanied, as was the case here, then wholly insufficient; and that, therefore, a new trial should be granted.

Hosmer, Ch. J. and Brainard, J. were of the same opinion.

Peters, J. It is a general and well settled rule, that what a party has admitted or acknowledged against his interest, is the best evidence, and admissible against him. This being the rule in civil cases, *a fortiori* the voluntary confession of a prisoner is evidence against him, in a criminal prosecution; and, if fairly obtained, and satisfactorily proved, is sufficient to convict, without any corroborating circumstances. *Swift's Ev.* 106. 108. 1 *Phill. Ev.* 6. 1 *MacNal. Ev.* 51.

But it is said, this rule has exceptions; and that where the existence of the marriage is essential to the existence of the crime, an actual marriage must be proved, by witnesses, record or certificate—*e. g.* in actions for criminal conversation, prosecutions for bigamy, incest, adultery. This exception seems to have originated in *Morris* v. *Miller*, 4 *Burr.* 2057. 2059., where in an action for criminal conversation, the court said: " We are all clearly of opinion, that in this kind of action, there must be evidence of a marriage in fact: acknowledgement, cohabitation and reputation are not sufficient." But the court

New-Haven,
July,
1827.

State
v.
Roswell.

confined the exception to two cases, bigamy and criminal conversation; and they seem to have considered, that the defendant's apprehension, that the woman with whom he was caught in bed, was the plaintiff's wife, was not sufficient to convict him, as there was no proof that he knew her to be such, of his own knowledge; and that the admission of the defendant, that this woman was the plaintiff's wife, was an admission that she was so reputed, and that he knew her so to be. 2 *Wils.* 399. *Bul. N. P.* 28. 2 *Phill. Ev.* 152. And when the doctrine of Lord *Mansfield* in *Morris* v. *Miller* was urged in a subsequent case, in the *Common Pleas, Rigg* v. *Curgenven,* 2 *Wils.* 395. 399. the court observed: "As to the case mentioned of criminal conversation, to be sure a defendant's saying in jest, or in loose rambling talk, that he had lain with the plaintiff's wife, would not be sufficient alone to convict him in *that* action; but if it were proved, that the defendant had seriously or solemnly recognized that he knew the woman he had lain with, was the plaintiff's wife, we think it would be evidence proper to be left to a jury." 2 *Stark. Ev.* 36. How far the decision in *Morris* v. *Miller,* was influenced by the marriage act 26 *Geo.* 2. *c.* 36. it is not necessary now to enquire; although from a remark of Lord *Mansfield* in *Birt* v. *Barlow, Doug.* 166. that statute seems to have governed the case. If so, it can have no influence here; and it seems not to be considered as law in *England.* "The decision, therefore," says *Phillips,* "in *Morris* v. *Miller,* does not warrant the conclusion, that a distinct and full acknowledgement of the marriage, made by the defendant himself, will not be evidence of the fact as against him, and sufficient to dispense with the more formal and strict proof of the marriage. But on the contrary, an opposite inference may be properly collected from the statement of Mr. Justice *Buller,* namely, that such an acknowledgment is good evidence of the fact of marriage against the party so acknowledging." 2 *Phill. Ev.* 151. Even in the case of a prosecution for bigamy, with which the action for adultery has been often compared, in one respect, as requiring the same strictness of proof, the judges have held, that the prisoner's acknowledgment of the first marriage, is admissible as evidence of that fact. *Trueman's* case, 1 *East. P. C.* 470. 1 *Russell* on *Crimes* 300.

The case of *Morris* v. *Miller* having been decided before the revolution, it has been recognized *as authority,* by the supreme court, of the state of *New-York,* who held, that the mere con-

fession of the defendant, was not sufficient evidence.  *The Peo-*
*ple* v. *Humphrey,* 7 *Johns. Rep.* 314.  But that case was over-
ruled, by the supreme court of *Pennsylvania,* for more substan-
tial reasons.  *Forney* v. *Hallacher,* 8 *Serg. & Rawle* 159.  2
*Stark. Ev.* 939. n.

New-Haven,
July,
1827.

State
*v.*
Roswell.

In the present case, the question is not whether the evidence
offered was sufficient, but whether it was admissible; and the
confession relates to a fact necessarily within the prisoner's
knowledge; whereas in the case of *Morris* v. *Miller,* it may be
said, that the defendant might have spoken vaguely, and with-
out any means of information.  Still however, upon the gener-
al principles of evidence, an acknowledgment of the fact of
marriage seems admissible to prove that fact against the defen-
dant.

I think the judge decided correctly; and I do not advise a
new trial.

LANMAN, J. concurred in this opinion.

New trial to be granted.